# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**,<br>   378 N. Main Street,<br>   Tucson, AZ 85701<br><br>       *Plaintiff,*<br>v.<br><br>**DAVID BERNHARDT**, in his official capacity as Secretary of the U.S. Department of Interior,<br>   1849 C Street NW<br>   Washington, DC 20240, and<br><br>**U.S. FISH AND WILDLIFE SERVICE**<br>   1849 C Street N.W.<br>   Washington, D.C. 20240<br><br>       *Defendants.* | Case No.: 1:19-cv-01607<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. The Center for Biological Diversity (Center), an environmental organization that works to protect imperiled wildlife species and their habitats, challenges the U.S. Fish and Wildlife Service's (Service) failure to comply with the nondiscretionary deadlines set forth in the Endangered Species Act, 16 U.S.C. §§ 1531–1544 (Act). Specifically, the Service failed to designate "critical habitat" for the Georgetown salamander (*Eurycea naufragia*) and the Salado salamander (*Eurycea chisholmensis*) (collectively, Salamanders) concurrently with its decision to list the Salamanders as endangered and within one year of proposing to designate that essential habitat. *Id.* § 1533(a)(3), (b)(6)(A)(ii), (b)(6)(C). The Center requests that this Court order Defendants to designate critical habitat for the Salamanders by a date certain. With degradation

of their underwater habitats causing significant declines, these federally threatened Salamanders urgently need their key habitats protected.

2. Below the bustling suburbs of central Texas, the Georgetown and Salado salamanders live an almost secret existence in the cool, clear springs, spring runs, wet caves, and groundwater near the northern part of the Edwards Aquifer. Breathing through the feathery gills that crown their heads, these amphibians spend their entire lives underwater, relying on plenty of high-quality spring water to survive, grow, and reproduce.

3. Unfortunately, sprawling urban development from Austin and surrounding towns has polluted, degraded, and destroyed the Salamanders' springs over the past few decades and continues to do so.

4. The Service recognized the Salamanders' precarious position as early as 1994 when it listed them as "candidates" in need of protections under the Endangered Species Act. In 2004, after the Salamanders had languished for a decade without federal protections, the Center petitioned the Service to list them under the Act.

5. On August 22, 2012, the Service proposed listing the Salamanders as endangered and designating 1,031 acres of spring and cave habitat for the Georgetown salamander and 372 acres of spring habitat for the Salado salamander. 77 Fed. Reg. 50,768, 50,812 (Aug. 22, 2012). But the Service failed to finalize those protections as required by the Act, instead offering excuses for withholding the protections at least three times over the following year and a half. 78 Fed. Reg. 5,385 (Jan. 25, 2013); 78 Fed. Reg. 51,129 (Aug. 20, 2013); 79 Fed. Reg. 800 (Jan. 7, 2014).

6. Finally, in February 2014, the Service listed both Salamanders as "threatened" species under the Act; however, it did not designate critical habitat for either species. 79 Fed. Reg. 10,236 (Feb. 24, 2014).

7. Having proposed critical habitat for the Salamanders on August 22, 2012, and having listed the Salamanders on February 24, 2014, the Endangered Species Act required that the Service designate critical habitat by February 24, 2014. Yet the Service still has not done so.

8. The Endangered Species Act can provide lifesaving habitat protections for these imperiled Salamanders, but only if the Service complies with its mandates. Because Defendants violated the Endangered Species Act and the Administrative Procedure Act (APA) by failing to timely designate critical habitat for the Salamanders, the Center brings this action. The Center requests declaratory relief and an injunction requiring the Service to issue its final rule designating critical habitat to safeguard the springs, spring runs, wet caves, and groundwater the Salamanders need to survive in the wild.

## JURISDICTION AND VENUE

9. Plaintiff brings this action under the Endangered Species Act, 16 U.S.C. §§ 1533, 1540(g), and the APA, 5 U.S.C. § 706.

10. The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346 (United States as a defendant), 16 U.S.C. § 1540(c) (actions arising under the Endangered Species Act), 16 U.S.C. § 1540(g) (citizen suit provision of the Endangered Species Act), and 5 U.S.C. § 702 (Administrative Procedure Act).

11. The relief sought is authorized under 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (injunctive relief), 16 U.S.C. § 1540(g) (citizen suits under the Endangered Species Act), and 5 U.S.C. § 702 (right of review under the Administrative Procedure Act).

12. The Center provided formal notice to Defendants of its intent to file suit under the Endangered Species Act on December 3, 2018, more than 60 days prior to filing this complaint, consistent with the Act's statutory requirements. 16 U.S.C. § 1540(g)(2). Because Defendants have not remedied the legal violations outlined in the notice, an actual, justiciable controversy exists between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C. § 2201.

13. Venue is proper in the United States District Court for the District of Columbia according to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A) because the Defendants reside in this judicial district.

## PARTIES

14. Plaintiff Center for Biological Diversity is a national, nonprofit conservation organization incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States, including Arizona, California, Colorado, Florida, Hawai'i, Idaho, Minnesota, Nevada, New Mexico, New York, North Carolina, Oregon, Washington, and Washington, D.C., and in Mexico. The Center works through science, law, and policy to secure a future for all species, great and small, hovering on the brink of extinction. The Center has more than 69,000 active members across the country. The Center and its members are concerned with the conservation of imperiled species, including the Salamanders, through effective implementation of the Endangered Species Act. The Center brings this action on behalf of itself and its members.

15. The Center's members include individuals with recreational, scientific, professional, aesthetic, spiritual, and ethical interests in the Salamanders and their habitat. They have visited areas vital to the survival of the Salamanders to observe them and enjoy the beauty

of their springs habitat, and they have concrete plans to do so again. For instance, one member has a spring on her property that is occupied by Georgetown salamanders and regularly visits the spring with the hope of seeing one. Another member studies central Texas salamanders, including the Georgetown and Salado salamanders, and intends to continue looking for the Salamanders in the future.

16. Defendants' failure to comply with the Endangered Species Act's nondiscretionary deadline to designate critical habitat for Salamanders denies vital protections that the species need to survive and recover. For example, while the Service withholds final critical habitat designations, human development continues to expand and impact the Salamanders' remaining habitat. Until the Service protects the Salamanders' critical habitat under the Act, the Center's and its members' interests in the species and their habitats are injured. These injuries are actual, concrete injuries presently suffered by the Center's members. Defendants' inaction caused these injuries, which will continue to occur unless this Court grants relief.

17. The relief sought herein—an order compelling the Service to designate critical habitat—would redress these injuries by protecting the Georgetown and Salado salamanders' habitat before it can be further degraded or destroyed. Conserving the Salamanders and their habitat would mean that the Center and its members can continue to pursue their educational, scientific, recreational, aesthetic, and spiritual interests in them. The Center and its members have no other adequate remedy at law.

18. Defendant David Bernhardt is the Secretary of the United States Department of the Interior. As Secretary of the Interior, he has the ultimate responsibility to administer and implement the provisions of the Endangered Species Act for the Georgetown and Salado

salamanders, including timely designation of critical habitat, and to comply with all other federal laws applicable to the Department of the Interior. The Center sues Defendant Bernhardt in his official capacity.

19. Defendant United States Fish and Wildlife Service is a federal agency within the Department of the Interior. The Secretary of the Interior has delegated his authority to administer the Endangered Species Act for terrestrial and non-marine wildlife to the Service. 50 C.F.R. § 402.01(b). This authority encompasses timely compliance with the Endangered Species Act's mandatory deadlines to designate critical habitat.

## STATUTORY AND REGULATORY FRAMEWORK

20. The Endangered Species Act "represent[s] the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). "Congress intended endangered species be afforded the highest of priorities." *Id.* at 174. Accordingly, the Act's purpose is to "provide a program for the conservation of . . . endangered species and threatened species" and "to provide a means whereby the ecosystems upon which endangered . . . and threatened species depend may be conserved." 16 U.S.C. § 1531(b).

21. To that end, the Endangered Species Act requires the Service to protect imperiled species by listing them as "endangered" or "threatened." *Id.* § 1533(a)(1). A species is endangered if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is threatened if it is "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

22. Once a species is listed, it receives a host of important protections designed to prevent its extinction and aid its recovery, including one of the most crucial protections—

safeguards for its "critical habitat." *Id.* § 1533(a)(3)(A).

23. Critical habitat includes specific areas occupied by the threatened or endangered species with "physical or biological features . . . essential to the conservation of the species and . . . which may require special management considerations or protection," as well as specific areas unoccupied by the species that "are essential for the conservation of the species." *Id.* § 1532(5)(A). "Conservation" of a species means "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the Act] are no longer necessary." *Id.* § 1532(3). Accordingly, critical habitat includes areas that require proper management to ensure a listed species will not simply survive but also recover.

24. Protecting critical habitat is necessary to protect and recover many listed species, particularly those that have become endangered or threatened because of historical and ongoing habitat loss or degradation. Thus, Section 7 of the Endangered Species Act requires all federal agencies to ensure their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of their remaining "critical habitat." *Id.* § 1536(a)(2).

25. To ensure species at risk of extinction receive these essential habitat protections in a timely manner, Congress prioritized designating critical habitat. *Id.* § 1533(a)(3), (b)(6); *see also id.* § 1531(b) (statutory directive to "provide a means whereby the ecosystems upon which endangered . . . and threatened species depend may be conserved"). The Service is required, "to the maximum extent prudent and determinable," to designate critical habitat for a species "concurrently with making a determination" that it is endangered or threatened," *id.*

§ 1533(a)(3)(A), (b)(6)(C), and within one year of issuing a rule proposing critical habitat, *id.* § 1533(b)(6)(A)(ii).

26. If critical habitat is "not . . . determinable" at this mandatory decision point, the Service may extend the deadline to designate critical habitat by "no more than one additional year," at which point it must publish a final regulation "based on such data as may be available at the time." *Id.* § 1533(b)(6)(C)(ii). Designation of critical habitat is not determinable when "[d]ata sufficient to perform required analyses are lacking; or . . . [t]he biological needs of the species are not sufficiently well known to identify any area that meets the definition of 'critical habitat.'" 50 C.F.R. § 424.12(a)(2).

27. Designating critical habitat is "not prudent" when: (1) "the species is threatened by taking or other human activity," such as commercial collecting, and identifying critical habitat would increase the degree of that threat; or (2) "designation of critical habitat would not be beneficial to the species" because, for instance, habitat destruction is not a threat to the species. *Id.* § 424.12(a)(1).

28. The Service must make critical habitat designations based on "the best scientific data available." 16 U.S.C. § 1533(b)(2).

29. If the Service finds it is not prudent to designate critical habitat or that critical habitat is not determinable, it must "state the reasons for not designating critical habitat in the publication of proposed and final rules listing a species." 50 C.F.R. § 424.12(a).

30. The Endangered Species Act does not safeguard a species' critical habitat until the Service designates it. Accordingly, it is imperative that the Service meticulously follow the Act's procedures and deadlines to ensure it designates critical habitat in a timely manner.

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

31. The Georgetown salamander is smoky gray with a short snout, red feathery gills, and large eyes with gold irises.

32. The Salado salamander, pictured below, is dusky with a hint of cinnamon and tiny light flecks. It has a blunt round snout, reddish feathery gills, and a well-developed fin along the top of its tail.



33. Both Salamanders retain external, feathery gills into adulthood and live submerged in interconnected crevices and passages in springs, spring runs, wet caves, and groundwater around the northern part of the Edwards Aquifer in central Texas. As spring-dwelling creatures, the Salamanders depend on having an adequate quantity of high-quality fresh water to survive, grow, and reproduce.

34. The primary threat to the Salamanders is habitat modification in the form of degraded water quality, quantity, and flow, and spring disturbance. Degraded water quality and diminished quantity can make habitat unsuitable for the species to survive. Physical disturbances

that release sediment or directly compact spring and stream beds destroy the spaces between rocks that the Salamanders need to hunt and take cover from predators.

35. Urbanization drives this type of habitat modification by disrupting surface and groundwater recharge, introducing pollutants to surface and subsurface waters, and radically altering natural water flows. In fact, urbanization is one of the most significant threats to the Salamanders' survival.

36. Urbanization also contributes pollution from roads, construction, industry, pesticide and fertilizer application, human and animal waste, limestone quarries, and hazardous spills. These contaminants pollute surface water, which can filter down into groundwater and negatively affect the Salamanders and the small crustaceans, worms, and insects they prey upon.

37. Development and urbanization also decrease water quantity for the Salamanders by obstructing water from reaching aquifers and springs through ground infiltration and surface flow. They also support larger human populations with increased demand for water.

38. As rapid human population growth continues in the Salamanders' ranges, urbanization and development remain growing threats to the species and their limited spring habitat.

39. In May 2004 the Center submitted a petition, substantiated by the best scientific studies available, asking the Service to list the Georgetown salamander and Salado salamander as endangered or threatened and to designate critical habitat under the Endangered Species Act.

40. Eight years later on August 22, 2012, the Service proposed listing the Salamanders as endangered and designating 1,031 acres of critical habitat for the Georgetown salamander and 372 acres of critical habitat for the Salado salamander. 77 Fed. Reg. 50,768 (Aug. 22, 2012).

41. Another six months later in January 2013, the Service reopened the public comment period on the proposed listings and designation of critical habitat because it had identified and was proposing additional critical habitat units for the Georgetown salamander. 78 Fed. Reg. 5,385 (Jan. 25, 2013).

42. In August 2013 the Service announced a six-month extension of its final decision of whether to list the Salamanders as endangered or threatened species and reopened the comment period on the proposed rule to list them, citing "substantial disagreement regarding the sufficiency or accuracy of the available data relevant to [their] determination." 78 Fed. Reg. 51,129 (Aug. 20, 2013).

43. The Service again reopened the public comment period on its proposal to list the Salamanders in January 2014 and requested comments on the City of Georgetown's final ordinances for water quality and urban development, which the city proposed to benefit the Georgetown salamander. 79 Fed. Reg. 800 (Jan. 7, 2014).

44. On February 24, 2014, the Service listed the Georgetown salamander and Salado salamander as threatened under the Endangered Species Act. 79 Fed. Reg. 10,236 (Feb. 24, 2014). The Service did not designate critical habitat and did not indicate a need or basis for an extension of time for such designation. *Id.*

45. On April 11, 2014, the Service published a correction to the final rule, which did not address designation of critical habitat for the Salamanders. 79 Fed. Reg. 20,107 (Apr. 11, 2014).

46. As of the date of this Complaint, the Service has not finalized any rules designating critical habitat for the Georgetown and Salado salamanders.

47. The Service made no findings in either the proposed or final listing rules that designating critical habitat was "not prudent" or "not determinable." Indeed, the Service proposed to designate areas it identified as meeting the definition of critical habitat.

48. Under the Endangered Species Act, the Service was required to designate critical habitat concurrently with its final decision to list the Georgetown and Salado salamanders as threatened on February 24, 2014, and no more than a year after proposing critical habitat on August 22, 2012. Yet nearly five years later, following a pattern of missed statutory deadlines, the Service has not made this mandatory, nondiscretionary finding, in violation of the Act. 16 U.S.C. § 1533(b)(3)(B).

## PLAINTIFF'S CLAIMS FOR RELIEF

### First Claim for Relief
<u>Failure to Designate Critical Habitat for the Georgetown Salamander</u>

49. The Center re-alleges and incorporates by reference all the allegations set forth in this Complaint as though fully set forth below.

50. The Endangered Species Act required Defendants to designate critical habitat for the Georgetown salamander concurrently with its listing decision, 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(C), and within one year of proposing critical habitat, *id.* § (b)(6)(A)(ii), unless critical habitat was not prudent or determinable. Defendants never found that designation of critical habitat would be not prudent or determinable. However, Defendants never finalized their proposed designation of critical habitat and thus are in violation of the Act's express statutory command to timely designate critical habitat.

51. Under the APA a reviewing court "shall" interpret statutes and "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

52. The Service's failure to designate critical habitat for the Georgetown salamander violates the Endangered Species Act, 16 U.S.C. § 1533(a)(3)(A), (b)(6)(A), (C), and its implementing regulations, and constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).

**Second Claim for Relief**
<u>Failure to Designate Critical Habitat for the Salado Salamander</u>

53. The Center re-alleges and incorporates by reference all the allegations set forth in this Complaint as though fully set forth below.

54. The Endangered Species Act required Defendants to designate critical habitat for the Salado salamander concurrently with its listing decision, 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(C), and within one year of proposing critical habitat, *id.* § (b)(6)(A)(ii), unless critical habitat was not prudent or determinable. Defendants never found that designation of critical habitat would be not prudent or determinable. However, Defendants never finalized their proposed designation of critical habitat and thus are in violation of the Act's express statutory command to timely designate critical habitat.

55. Under the APA, a reviewing court "shall" interpret statutes and "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

56. The Service's failure to designate critical habitat for the Salado salamander violates the Endangered Species Act, 16 U.S.C. § 1533(a)(3)(A), (b)(6)(A), (C), and its implementing regulations, and constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Center for Biological Diversity requests that this Court enter a Judgment in favor of the Center providing the following relief:

(1) Declare that Defendants violated the Endangered Species Act and APA by failing to designate critical habitat for the Georgetown salamander and Salado salamander;

(2) Order Defendants to designate—by a reasonable date certain—final critical habitat for the Georgetown salamander and Salado salamander under the Endangered Species Act, 16 U.S.C. § 1533(a)(3)(A);

(3) Grant the Center its reasonable attorneys' fees and costs in this action, as provided by the Endangered Species Act, 16 U.S.C. § 1540(g)(4), or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(4) Provide such other relief as the Court deems just and proper.

DATED: June 3, 2019         Respectfully submitted,

 */s/ Elise Pautler Bennett*
Elise Pautler Bennett
D.C. Bar No. FL0018
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel: (727) 755-6950
Fax: (520) 623-9797
ebennett@biologicaldiversity.org

 */s/ Collette L. Adkins*
Collette L. Adkins
MN Bar No. 035059X*
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN 55014-0595
Tel: (651) 955-3821

cadkins@biologicaldiversity.org

*Seeking admission *pro hac vice*

*Attorneys for Plaintiff*